EXHIBIT "A"

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**1. (a) PLAINTIFFS**
INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 98 ANNUITY FUND, PENSION FUND, HEALTH AND WELFARE FUND AND JOINT TRAINING, RETRAINING, SKILL IMPROVEMENT, SAFETY EDUCATION, APPRENTICESHIP AND TRAINING FUND, by William Sullivan and David Cardimino, as Trustees, et. al.

**DEFENDANTS**
NITA, INC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Hampden
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Blitman & King LLP,  Charles E. Blitman, Esq.
Franklin Center, Suite 300, 443 North Franklin Street
Syracuse, New York  13204-1415      TEL: (315) 422-7111

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT )
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| | | | **PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability | **LABOR** | **SOCIAL SECURITY** | |
| | **PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl Ret Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW(405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

29 U.S.C. Section 1132(g)(2); Collection of Delinquent Fringe Benefit Contributions

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P 23

**DEMAND $**
13,126.99+

CHECK YES only if demanded in Complaint
JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE                DOCKET NUMBER

DATE    October 28, 2004

SIGNATURE OF ATTORNEY OF RECORD    Charles E. Blitman    *Charles E. Blitman*

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)    International Union of Operating Engineers Local 98 Annuity Fund,
    Pension Fund, Health and Welfare Fund and Joint Training, Retraining, Skill Improvement, Safety Education, Apprenticeship
    and Training Fund, by William Sullivan and David Cardimino, as Trustees, et. al. v. Nita, Inc.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule
    40.1(a)(1)).

    [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    [X]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

    [ ]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

    [ ]  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

    [ ]  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this
    district please indicate the title and number of the first filed case in this court.

    _____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                        YES [ ]        NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
    §2403)
                                                        YES [ ]        NO [X]
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                        YES [ ]        NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                        YES [ ]        NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                        YES [X]        NO [ ]

    A.  If yes, in which division do all of the non-governmental parties reside?
        Eastern Division [ ]      Central Division [ ]      Western Division [X]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
        residing in Massachusetts reside?

        Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit
    a separate sheet identifying the motions)
                                                        YES [ ]        NO [ ]

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME**  Blitman & King LLP, Charles E. Blitman, Esq.
**ADDRESS**  Franklin Center, Suite 300, 443 North Franklin Street, Syracuse, New York 13204
**TELEPHONE NO.**  (315) 422-7111

# *United States District Court*

## DISTRICT OF MASSACHUSETTS

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 98 ANNUITY FUND,
PENSION FUND, HEALTH AND WELFARE
FUND AND JOINT TRAINING, RETRAINING,
SKILL IMPROVEMENT, SAFETY EDUCATION,
APPRENTICESHIP AND TRAINING FUND
by William Sullivan and David Cardimino,
as Trustees, et al.,

Plaintiffs,

v.

NITA, INC.,

Defendant.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 04- 30212- KPN

TO: (Name and address of defendant)

NITA, INC.
143 Shaker Road
East Longmeadow, Massachusetts  01028-0370

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

BLITMAN & KING LLP
FRANKLIN CENTER, SUITE 300
443 NORTH FRANKLIN STREET
SYRACUSE, NEW YORK  13204-1415

an answer to the complaint which is herewith served upon you, within _____ twenty (20) _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

TONY ANASTAS

CLERK

_Mary Finn_

(BY) DEPUTY CLERK

November 1, 2004

DATE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS    WESTERN DIVISION

--------------------------------------------------------------------

INTERNATIONAL UNION OF OPERATING ENGINEERS          )
LOCAL 98 ANNUITY FUND, PENSION FUND, HEALTH          )
AND WELFARE FUND AND JOINT TRAINING,                )
RETRAINING, SKILL IMPROVEMENT, SAFETY               )
EDUCATION, APPRENTICESHIP AND TRAINING FUND         )
by William Sullivan and David Cardimino, as Trustees;   )
INTERNATIONAL UNION OF OPERATING ENGINEERS          )
LOCAL NO. 98 AND EMPLOYERS COOPERATIVE TRUST,       )
by William Sullivan and David Cardimino, as Trustees; CENTRAL  )
PENSION FUND OF THE INTERNATIONAL UNION OF          )
OPERATING ENGINEERS AND PARTICIPATING               )
EMPLOYERS, by Michael R. Fanning, as Chief Executive    )     **COMPLAINT**
Officer; and INTERNATIONAL UNION OF OPERATING       )
ENGINEERS LOCAL 98, AFL-CIO, by David Cardimino, as   )
Business Manager,                                    )
                                                     )
                          Plaintiffs,                )
                                                     )
            v.                                       )     Civil Action No.
                                                     )     04- 30212- MPN
NITA, INC.,                                          )
                                                     )
                          Defendant.                 )

--------------------------------------------------------------------

Plaintiffs, by their undersigned attorneys, Blitman & King LLP, complaining of the defendant,

respectfully allege as follows:

## I. JURISDICTION AND VENUE

1.      This is an action arising under the Employee Retirement Income Security Act of 1974

[hereinafter the "Act"] [29 U.S.C. §§ 1001 et seq.].  It is an action by fiduciaries of employee benefit

plans for monetary and injunctive relief to redress violations of Section 515 of the Act [29 U.S.C.

§ 1145].

2.      Jurisdiction is conferred on this Court by § 502 of the Act [29 U.S.C. § 1132], without respect to the amount in controversy or the citizenship of the parties, as provided in § 502(f) of the Act [29 U.S.C. § 1132(f)].

3.      Venue is established in this Court by § 502(e)(2) of the Act [29 U.S.C. § 1132(e)(2)]. It is an action brought in the district where some of the plans are administered.

4.      This is also an action arising under Section 301(a) of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)]. It is a suit for, among other things, violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce as defined in the Labor-Management Relations Act of 1947, as amended [29 U.S.C. §§ 141 et seq.].

5.      Thus, jurisdiction is also conferred on this Court, without respect to the amount in controversy, pursuant to Section 301 of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)], and pursuant to 28 U.S.C. § 1337.


## II. DESCRIPTION OF THE PARTIES


6.      Plaintiffs William Sullivan and David Cardimino are Trustees of the International Union of Operating Engineers Local 98 Annuity Fund, Pension Fund, Health and Welfare Fund and Joint Training, Retraining, Skill Improvement, Safety Education, Apprenticeship and Training Fund [hereinafter "Annuity, Pension, Health and Welfare and Training Funds"]. Mr. Sullivan and Mr. Cardimino are fiduciaries of the Annuity, Pension, Health and Welfare and Training Funds as defined in § 3(14)(A) of the Act [29 U.S.C. § 1002(14)(A)]. The Annuity, Pension, Health and Welfare and Training Funds are administered at Two Center Square, P.O. Box 217, East Longmeadow, Massachusetts 01028.

2

7.    Plaintiffs William Sullivan and David Cardimino are Trustees of the International Union of Operating Engineers Local No. 98 and Employers Cooperative Trust [hereinafter "Local 98 E.C.T."]. Mr. Sullivan and Mr. Cardimino are fiduciaries of the Local 98 E.C.T. as defined in § 3(14)(A) of the Act [29 U.S.C. § 1002(14)(A)]. The Local 98 E.C.T. is administered at Two Center Square, P.O. Box 217, East Longmeadow, Massachusetts 01028.

8.    Plaintiff Michael R. Fanning is the Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers [hereinafter "Central Pension Fund"]. Mr. Fanning is a fiduciary of the Central Pension Fund, as defined in § 3(14)(A) of the Act [29 U.S.C. § 1002(14)(A)]. The Central Pension Fund maintains an office and principal place of business at 4115 Chesapeake Street, N.W., Washington, D.C. 20016.

9.    The Annuity, Pension, Health and Welfare and Training Funds, the Local 98 E.C.T. and the Central Pension Fund [hereinafter collectively referred to as "Funds"], established pursuant to collective bargaining agreements, are multi-employer plans as defined in § 3(37) of the Act [29 U.S.C. § 1002(37)], and are employee benefit plans, as described in § 3(3) of the Act [29 U.S.C. § 1002(3)].

10.    Plaintiff David Cardimino is also the Business Manager of the International Union of Operating Engineers Local 98, AFL-CIO [hereinafter "Union"]. The Union is an unincorporated association maintaining its principal offices at Two Center Square, P.O. Box 217, East Longmeadow, Massachusetts 01028 and is a labor organization in an industry affecting commerce, within the meaning of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 141, et seq.].

11.    Upon information and belief, defendant Nita, Inc. [hereinafter "defendant" or "Nita"] is a corporation incorporated under the laws of the State of Massachusetts, having its principal place of business and offices located at 143 Shaker Road, East Longmeadow, Massachusetts 01028-0370.

3

12.     The defendant is an employer in an industry affecting commerce, all as defined in § 3(5)(11) and (12) of the Act [29 U.S.C. § 1002(5)(11) and (12)]. The defendant is also an employer of employees covered by employee benefit plans and multiemployer plans maintained pursuant to collective bargaining agreements, all as defined in § 3(3) and (37) of the Act [29 U.S.C. § 1002(3) and (37)] and is obligated to make contributions to the Funds in accordance with § 515 of the Act [29 U.S.C. § 1145].

13.     Defendant is a party in interest with respect to the Funds as defined in § 3(14)(H) of the Act [29 U.S.C. § 1002(14)(H)] and acts directly as employer and/or indirectly in the interests of the employer in relation to the Plans, all as defined in § 3(5) of the Act [29 U.S.C. § 1002(5)].

## III. FIRST CAUSE OF ACTION

14.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "13" inclusive of this Complaint as if set forth fully at this point.

15.     Section 515 of the Act [29 U.S.C. § 1145] provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

16.     At all times relevant herein, defendant Nita, Inc. was party to a collective bargaining agreement with International Union of Operating Engineers Local 98, AFL-CIO [hereinafter "Agreement"].

17.     Pursuant to the Agreement, defendant is bound by the terms and conditions, rules and regulations of the Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 Annuity Fund, the Restated Agreement and Declaration of Trust of the International Union of

4

Operating Engineers Local 98 Pension Fund, the Restated Agreement and Declaration of Trust of the

International Union of Operating Engineers Local 98 Health and Welfare Fund, the Restated Agreement

and Declaration of Trust of the Joint Training, Retraining, Skill Improvement, Safety Education,

Apprenticeship and Training Fund of the International Union of Operating Engineers Local 98, the

Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local

No. 98 and Employers Cooperative Trust, the Restated Agreement and Declaration of Trust of the

Central Pension Fund of the International Union of Operating Engineers and Participating Employers,

and the International Union of Operating Engineers Local 98 Pension, Annuity, Health and Welfare and

Training Funds' Collections Policy [hereinafter "Trusts" and "Collections Policy"].

     18.    The Agreement, Trusts, and the Collections Policy obligate the defendant to remit

contributions to multiemployer plans.

     19.    The Agreement requires the defendant to pay stipulated amounts to the following

multiemployer plans for each hour each of its employees worked:

ANNUITY FUND
PENSION FUND
HEALTH AND WELFARE FUND
TRAINING FUND
LOCAL 98 E.C.T.
CENTRAL PENSION FUND

     20.    The Agreement also requires the defendant to deduct from each of its employees' wages

stipulated sums for each hour worked and pay said amounts to the Union, said amounts representing

Union dues and Social Action Fund monies.

     21.    In addition to the above and the Agreement, the Trusts, the Collections Policy, and 29

U.S.C. § 1132(g)(2), in the event the defendant fails to timely remit contributions and deductions, it

becomes liable not only for the amount of contributions and deductions due, but also for the following:

5

(1) interest on the unpaid and untimely paid Annuity Fund, Pension Fund, Health and Welfare Fund and Training Fund contributions, calculated at the rate of one and one-half percent (1-1/2%) per month; (2) the greater of interest on the unpaid and untimely paid Annuity Fund, Pension Fund, Health and Welfare Fund and Training Fund contributions, or liquidated damages equal to twenty percent (20%) of those delinquent contributions; (3) interest on the unpaid and untimely paid Local 98 E.C.T. contributions, calculated at the rate prescribed by ERISA [29 U.S.C. §1132(g)(2)]; (4) interest again on the unpaid and untimely paid Local 98 E.C.T. contributions; (5) interest on the unpaid and untimely paid Central Pension Fund contributions, calculations at the rate of nine percent (9%) of those delinquent contributions; (6) the greater of interest on the unpaid and untimely paid Central Pension Fund contributions, or liquidated damages equal to fifteen percent (15%) of those delinquent contributions; (7) interest on the unpaid dues deductions and Social Action Fund monies, calculated at the rate of nine percent (9%) per annum; and (8) costs and fees of collection and attorneys' and paralegal fees.

22.     During the period September 2002 through October 2002 and the period April 2003 through August 2003, defendant failed to remit the sum of $13,126.99 in contributions and deductions with regard to hours worked by employees covered by the Agreement.

23.     Defendant has failed and refused and continues to fail and refuse to pay the foregoing deductions and also failed and refused and continues to fail and refuse to pay the applicable interest, liquidated damages, costs and fees of collection and attorneys' fees.

24.     The defendant, therefore, owes $13,126.99 in contributions and deductions plus the following: (1) interest from October 10, 2002 on the $11,200.86 in unpaid and untimely paid Annuity Fund, Pension Fund, Health and Welfare Fund and Training Fund contributions, calculated at the rate of one and one-half percent (1-1/2%) per month; plus (2) the greater of interest on the $11,200.86 in unpaid and untimely paid Annuity Fund, Pension Fund, Health and Welfare Fund and Training Fund

6

contributions, or liquidated damages equal to twenty percent (20%) of those delinquent contributions; plus (3) interest from October 10, 2002 on the $337.51 in unpaid and untimely paid Local 98 E.C.T. contributions, calculated at the rate prescribed by ERISA [29 U.S.C. § 1132(g)(2)]; plus (4) interest again on the $337.51 in unpaid and untimely paid Local 98 E.C.T. contributions; plus (5) interest from October 10, 2002 on the $405.00 in unpaid and untimely paid Central Pension Fund contributions, calculations at the rate of nine percent (9%) of those delinquent contributions; plus (6) the greater of interest on the $405.00 in unpaid and untimely paid Central Pension Fund contributions, or liquidated damages equal to fifteen percent (15%) of those delinquent contributions; plus (7) interest from October 10, 2002 on the $1,183.62 in unpaid dues deductions and Social Action Fund monies, calculated at the rate of nine percent (9%) per annum; plus (8) costs and fees of collection and attorneys' and paralegal fees.

## V. SECOND CAUSE OF ACTION

25.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "24" inclusive of this Complaint as if set forth fully at this point.

26.    The Agreement, the Trusts and the Collections Policy obligate the defendant to permit the Funds, on demand, to check, examine and audit its books and records, papers and reports as may be necessary to permit the Funds to determine the amount of contributions due and owing, including, but not limited to, its payroll records, timecards, accounts payable records, general ledger, cash disbursements journal, hours reports, and any other records relating to hours worked by all employees, including union, non-union, bargaining unit and non-bargaining unit employees, of the defendant.

27.    Defendant is contractually liable under the Agreement, Trusts and Collections Policy to pay the costs and expenses of the audit, all auditing fees, and any and all attorneys' and paralegal fees and costs incurred by the Funds in obtaining the audit.

7

28.    Defendant is contractually liable under the Agreement, Trusts and Collections Policy to timely report on a monthly basis the number of hours worked by all of its employees performing bargaining unit work.

29.    Defendant has failed to comply with its contractual obligations by failing to timely file the appropriate remittance reports and submit payments and because of its conduct, plaintiffs are unable to determine whether it has accurately reported the number of hours worked by its employees and accurately remitted payment.

30.    Despite requests for compliance with its obligations, defendant has failed and refused, and continues to fail and refuse, to allow the plaintiffs access to its books and records to conduct an audit for the period January 1, 2002 to date.

31.    Defendant's conduct has caused plaintiffs to incur attorneys' fees and paralegal fees and costs in attempting to determine the extent of its delinquency.

32.    Defendant, therefore, must be ordered to produce its books and records for plaintiffs' review and audit, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys' and paralegal fees and costs incurred in obtaining that audit.

33.    In the event it is discovered that the defendant has not properly submitted accurate reports to the plaintiffs and has not properly paid the appropriate monies to the Funds and Union, the Court must enter a judgment for any and all contributions and deductions that are determined to be due, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys' and paralegal fees, all at the rates set forth in Complaint paragraph No. 21.

## VI. THIRD CAUSE OF ACTION

34.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "33" of this Complaint as if fully set forth herein.

35.    If the defendant is not enjoined from violating the Act and breaching the terms of the Agreement, the Trusts and the Collections Policy as aforesaid, the plaintiffs will be further damaged as a result thereof in ways and amounts which cannot be accurately measured in terms of money, either as to extent or amount.

36.    The defendant has continuously failed to comply with its obligations to the plaintiffs, despite due demand for compliance, and thus, unless the defendant is enjoined from violating the Act and breaching the terms of the Agreement, the Trusts and the Collections Policy, it is likely that the defendant will, upon information and belief, continue to fail to timely remit contributions, deductions and monthly remittance reports, causing the plaintiffs and the beneficiaries of the Funds to incur additional serious and irreparable harm by further burdening and obstructing the administration and operation of the Funds and endangering the payment of promised benefits from the Funds to qualified beneficiaries. A mere money judgment is, thus, an inadequate remedy at law.

37.    Because the defendant has failed to comply with its obligations to the Funds, the corpus of the Funds have been reduced, their income has been reduced, and their abilities to pay benefits are jeopardized, thereby endangering the stability and soundness of the Funds. Again, a money judgment is, thus, an inadequate remedy at law since the Funds will suffer irreparable harm.

38.    Because the defendant has refused to timely remit contributions, deductions and reports to the plaintiffs, beneficiaries of the Funds may have benefits reduced or terminated that they would otherwise qualify for had the defendant complied with its obligations, thereby causing these beneficiaries

9

and their families irreparable harm, and thus rendering a money judgment an inadequate remedy at law.

39.    Because the defendant continues to fail to comply with its obligations to the plaintiffs, new delinquencies are now being created monthly, again depriving the Funds of adequate monies to pay promised benefits which in turn causes the foregoing irreparable harm to be intensified in magnitude.

40.    For the foregoing reasons, the plaintiffs are without an adequate remedy at law and will suffer serious, substantial and irreparable injury and damage unless the defendant is enjoined from violating the Act and from breaching the terms of the Agreement, the Trusts and the Collections Policy.

41.    Unless the defendant is enjoined by this Court from breaching the terms of the collective bargaining agreement, the Trust Agreements and the Collections Policy and from violating the Act, and unless the defendant is compelled to remit all monies and reports that become due or are determined to be due to plaintiffs, whether arising before or after commencement of the action, greater injury will be inflicted upon the Plans, their Trustees, participants and beneficiaries, by denial of relief than could possibly be inflicted upon the defendant by granting such relief.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment against defendant Nita, Inc., as follows:

1.    On Plaintiffs' First Cause of Action, judgment against the defendant for $13,126.99 in contributions and deductions, plus the following:  (1) interest from October 10, 2002 on the $11,200.86 in unpaid and untimely paid Annuity Fund, Pension Fund, Health and Welfare Fund and Training Fund contributions, calculated at the rate of one and one-half percent (1-1/2%) per month; plus (2) the greater of interest on the $11,200.86 in unpaid and untimely paid Annuity Fund, Pension Fund, Health and Welfare Fund and Training Fund contributions, or liquidated damages equal to twenty percent (20%) of

those delinquent contributions; plus (3) interest from October 10, 2002 on the $337.51 in unpaid and untimely paid Local 98 E.C.T. contributions, calculated at the rate prescribed by ERISA [29 U.S.C. §(g)(2)]; plus (4) interest again on the $337.51 in unpaid and untimely paid Local 98 E.C.T. contributions; plus (5) interest from October 10, 2002 on the $405.00 in unpaid and untimely paid Central Pension Fund contributions, calculations at the rate of nine percent (9%) of those delinquent contributions; plus (6) the greater of interest on the $405.00 in unpaid and untimely paid Central Pension Fund contributions, or liquidated damages equal to fifteen percent (15%) of those delinquent contributions; plus (7) interest from October 10, 2002 on the $1,183.62 in unpaid dues deductions and Social Action Fund monies, calculated at the rate of nine percent (9%) per annum; plus (8) costs and fees of collec... ..nd attorneys' and paralegal fees.

On Plaintiffs' Second Cause of Action, judgment against the defendant:

(A) Requiring it to produce its books and records for plaintiffs' review and audit, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys' and paralegal fees and costs incurred in obtaining that audit; and

(B) For any and all contributions and deductions that are determined to be due, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys' and paralegal fees, all at the rates set forth in Complaint paragraph No. 21.

3. On Plaintiffs' Third Cause of Action, judgment against the defendant as follows:

(A) Judgment for any and all additional contributions and deductions that became due or are determined to be due, whether arising before or after commencement of the action, plus the applicable interest, liquidated damages, costs and fees of collection and attorneys' and paralegal fees; plus

(B) A permanent injunction preventing and restraining the defendant from breaching the Funds' Agreements and Declarations of Trust, the Funds' Collections Policy, and the collective bargaining agreements by which it is bound; plus

(C)    A permanent injunction directing the defendant to perform and continue to perform its obligations to plaintiffs, specifically, directing it to timely furnish the required monthly remittance reports and payments to plaintiffs, and to provide the plaintiffs, upon demand and at defendant's expense, access to its books and records for an audit and examination relating to the employment of its employees, including but not limited to weekly payroll reports, payroll journal and quarterly employer reports for various federal and state agencies.

DATED:  October 28, 2004

                                    **BLITMAN & KING LLP**

                        By:    _Charles E. Blitman_
                                    Charles E. Blitman, Esq.
                                    Bar Roll No. 653148
                                    Attorneys for Plaintiffs
                                    Office and Post Office Address
                                    Franklin Center, Suite 300
                                    443 North Franklin Street
                                    Syracuse, New York  13204-0415
                                    Telephone:  (315) 422-7111
                                    Facsimile:  (315) 471-2623

jlr\kah\iuoe98\Nita Complaint

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS    WESTERN DIVISION
------------------------------------------------------------------
INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 98 ANNUITY FUND, PENSION FUND, HEALTH
AND WELFARE FUND AND JOINT TRAINING,
RETRAINING, SKILL IMPROVEMENT, SAFETY
EDUCATION, APPRENTICESHIP AND TRAINING FUND
by William Sullivan and David Cardimino, as Trustees;
INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL NO. 98 AND EMPLOYERS COOPERATIVE TRUST,
by William Sullivan and David Cardimino, as Trustees; CENTRAL
PENSION FUND OF THE INTERNATIONAL UNION OF
OPERATING ENGINEERS AND PARTICIPATING
EMPLOYERS, by Michael R. Fanning, as Chief Executive
Officer; and INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 98, AFL-CIO, by David Cardimino, as
Business Manager,

                                        Plaintiffs,


        v.


NITA, INC.,

                            Defendant.
------------------------------------------------------------------

_____


        COMPLAINT
        Civil Action No.

_____


        BLITMAN & KING LLP
        Attorneys for Plaintiffs
        Office & P.O. Address
        Franklin Center, Suite 300
        443 North Franklin Street
        Syracuse, New York  13204-1415
        Telephone:  (315) 422-7111
        Facsimile:  (315) 471-2623

EXHIBIT "B"

**Hampden County Sheriff's**   •   1170 Main St.   •   P.O. Box 5005   •   Springfield, MA 01101-5005   •   (413) 732-5772

*Hampden, ss.*

December 16, 2004

I hereby certify and return that on 12/15/2004 at 12:15 pm I served a true and attested copy of the FEDERAL
SUMMONS & COMPLAINT in this action in the following manner: To wit, by delivering in hand to BERNARD
MOULTRIE, PRESIDENT,  person in charge at the time of service for NITA INC.  SERVICE MADE AT THE
HAMPDEN COUNTY SHERIFFS OFFICE, 1170 MAIN Street, SPRINGFIELD, MA 01103.Conveyance ($1.50),
Travel ($3.20), Basic Service Fee ($30.00), Mailing ($1.00), Attestation X 1 ($5.00) Total Charges $40.70

*Deputy Sheriff*

Deputy Sheriff  DANIEL D. LARROW

EXHIBIT "C"

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 98 ANNUITY FUND, PENSION FUND, HEALTH,
AND WELFARE FUND, ET AL**
                                    **Plaintiff**
                                                        **CA  04-30212-KPN**

                        **V.**

**NITA, INC.**
                        **Defendant**


### NOTICE OF DEFAULT


       Upon application of the Plaintiff, LOCAL 98         ,  an order of Default for

failure of the Defendant, NITA, INC.. , to plead or otherwise defend as provided by

Rule 55(a) of the Federal Rules of Civil Procedure, notice is hereby given that the

Defendant has been defaulted this 30TH   day of MARCH,  2005 .


                                    **SARAH A. THORNTON
                                    CLERK OF COURT**


                        **By:    /s/ Mary Finn
                                    Deputy Clerk**


**Notice mailed to:  Counsel for Plaintiff
                        And Defendant**


Default Notice.wpd - 2/2000)                                    [ntcdflt.]

EXHIBIT "D"



# INTERNATIONAL UNION OF OPERATING ENGINEER

## LOCAL 98 AFL-CIO

JOHN J. RICHARDS
BUSINESS MANAGER/PRESIDENT

TWO CENTER SQUARE, P.O. BOX 217
EAST LONGMEADOW, MA 01028
TEL. (413) 525-4291

### INDEPENDENT EMPLOYER ADOPTION

### OF THE

### MASSACHUSETTS BUILDING AND HEAVY & HIGHWAY AGREEMENT

**THIS AGREEMENT COVERS THE WAGES, WORKING RULES AND OTHER CONDITIONS OF EMPLOYMENT ENTERED INTO BY AND BETWEEN:**

Nita, Inc.

143 Shaker Road, PO Box 370

East Longmeadow, MA 01028-0370

**AND THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 98 AND ITS BRANCHES, OF EAST LONGMEADOW, MASSACHUSETTS.**

**THE UNDERSIGNED EMPLOYER, WHEN PERFORMING WORK WITHIN THE UNION'S JURISDICTION HEREBY AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF COLLECTIVE BARGAINING AGREEMENTS ENTERED INTO BETWEEN (1) THE LABOR RELATIONS DIVISION OF THE CONSTRUCTION INDUSTRIES OF MASSACHUSETTS, EFFECTIVE JUNE 1, 2002, FOR HEAVY AND HIGHWAY WORK AND (2) THE LABOR POLICY DIVISION OF THE CONSTRUCTION INDUSTRY ASSOCIATION OF WESTERN MASSACHUSETTS, INC. EFFECTIVE JUNE 1, 2002 FOR BUILDING WORK; AND AS THEY ARE AMENDED FROM TIME TO TIME; AND TO ACCEPT THE TERMS AND CONDITIONS OF THE AGREEMENTS AND DECLARATIONS OF TRUSTS OF THE LOCAL 98 HEALTH & WELFARE FUND, PENSION FUND, CENTRAL PENSION FUND, ANNUITY FUND, TRAINING FUND AND COOPERATIVE TRUST FUND AND TO MAKE CONTRIBUTIONS TO SAID FUNDS IN THE MANNER AND MODE AS ADOPTED BY THE TRUSTEES OF THE FUNDS.**

260 MERRILL ROAD
PITTSFIELD, MA 01201

BRANCH OFFICES

150 CHERRY STREET
BURLINGTON, VT 05401

This fax was received on the Blitman & King LLP fax server.

THESE COLLECTIVE BARGAINING AGREEMENTS SHALL REMAIN IN FULL FORCE AND
EFFECT UNLESS TERMINATED BY EITHER PARTY IN WRITING TO THE OTHER PARTY
AT LEAST SIXTY (60) DAYS BEFORE THE EXPIRATION DATES OF THE AFOREMENTIONED
COLLECTIVE BARGAINING AGREEMENTS.

THE EMPLOYER SIGNED BELOW, ENGAGED IN THE BUILDING AND/OR CONSTRUCTION
INDUSTRY, RECOGNIZES THE UNION AS THE SOLE AND EXCLUSIVE MAJORITY STATUS
REPRESENTATIVE OF THE BARGAINING UNIT PROVIDED FOR HEREIN, (COMMONLY
CALLED OPERATING ENGINEERS), EMPLOYED BY THE EMPLOYER. THIS RECOGNITION
IS BASED ON THE UNION'S HAVING SHOWN, OR HAVING OFFERED TO SHOW, AN
EVIDENTIARY BASIS OF ITS MAJORITY SUPPORT.

ON THE BASIS OF SUCH MAJORITY SUPPORT AND PURSUANT TO SECTION 9(a) OF THE
NATIONAL LABOR RELATIONS ACT 9 (AS AMENDED), THE EMPLOYER CONFIRMS THE
UNION AS THE SOLE AND EXCLUSIVE BARGAINING AGENT FOR THE UNIT OF "OPERATING"
ENGINEERS" (AS DEFINED HEREIN) IN THE EMPLOY OF THE EMPLOYER, WHICH SHALL
INCLUDE THE EMPLOYER'S PRESENT AND FUTURE JOB SITES.

ON THE DATE THIS COLLECTIVE BARGAINING AGREEMENT IS EFFECTIVE, THIS
RECOGNITION IS GRANTED WHICH SHALL INCLUDE ANY AMENDMENTS, EXTENSIONS AND
SUCCESSOR AGREEMENTS. THE EMPLOYER WILL NOT ATTEMPT TO VOID OR CANCEL
THE AGREEMENT AT ANY TIME BECAUSE IT HAS VARIED THE SIZE OF THE WORKFORCE
OR REDUCED THE WORKFORCE TO ONE OR FEWER EMPLOYEES.

SIGNED THIS ___16___ DAY OF __OCT.__ , 2002.

FOR THE EMPLOYER                              FOR THE UNION

                                             I. U. O. E. LOCAL 98, AFL-CIO

_____                    _____

__Gen. Mgr._____                          Business Manager/President
Title

SCHEDULE
of
WAGES, WORKING HOURS
AND CONDITIONS
for

# HOISTING and PORTABLE ENGINEERS

LOCAL UNION NO. 98
and Its Branches of the
International Union of
Operating Engineers



Telephone (413) 525-4291
Two Center Square
East Longmeadow, Massachusetts

# HEAVY and HIGHWAY AGREEMENT

Effective – June 1, 2002
Terminates – May 31, 2005

THIS AGREEMENT made this First day of June, 2002 by and between the LABOR RELATIONS DIVISION OF THE CONSTRUCTION INDUSTRIES OF MASSACHUSETTS, hereinafter called the "Association" on behalf of its members, each of which members is hereinafter designated as the "Employer", along with individual signator Contractors and THE HOISTING & PORTABLE ENGINEERS, LOCAL 98, 98A, 98B, AND 98R, INTERNATIONAL UNION OF OPERATING ENGINEERS, A.F.L.-C.I.O., hereinafter designated the "UNION."

## PREAMBLE

This Agreement is entered into to facilitate the adjustment of grievances and disputes between employers and employees; to provide insofar as possible, for the continuous employment of labor and to bring about stable conditions in the industry, and to establish necessary procedure for the amicable adjustment of all disputes which may arise between employers and employees.

## SCOPE OF EMPLOYMENT

The terms of this Agreement shall apply to all work within the jurisdiction of Hoisting and Portable Engineers in connection with all operations usually

- 1 -

undertaken by the Highway and Heavy Construction Industry, including but not limited to highway, heavy and utility construction on roads, streets, alleys, sidewalks, parkways, parking areas, airports, bridle paths, athletic fields, highway and railroad bridges, asphalt plants, aggregate processing plants, tunnels, water treatment plants, sewage treatment plants, subways, driveways, grade separation involving highways, conduits, service mains, sewers in trenches, foundations other than used exclusively in building construction, earth dams, snow removal, flood control projects, filter beds and filtration plants, including the assembly, operation and maintenance of all equipment (including Helicopters used for hoisting materials or equipment), vehicles and facilities used in connection with and serving the aforementioned work and services except when the matter of repairs is such that they cannot be made by employees. There shall be excluded, however, from this Agreement all building construction, oil terminals, piers, docks and marine construction.

### TERRITORIAL JURISDICTION

Massachusetts: Berkshire, Franklin, Hampshire and Hampden Counties. Also western part of Worcester County to a demarcation line formed by the eastern boundaries of the following townships: Sturbridge,

- 2 -

Brookfield, East Brookfield, North Brookfield, Oakham, Barre, Templeton and Winchendon.

## RECOGNITION, UNION SECURITY AND JOB REFERRALS

The employer recognizes and acknowledges that the Union is the exclusive representative of all employees in the classifications of work covered by this Agreement for the purposes of collective bargaining as provided by the Labor Management Relations Act of 1947, as amended.

All present employees who are members of the Union on the effective date of this Agreement shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereinafter shall become and remain members in good standing of the Union as a condition of employment on and after the eighth day following the beginning of their employment, or on and after the eighth day following the effective date of this Agreement, whichever is the later.

When the Employer needs additional employees, he shall notify the Union whenever possible of all such openings and the job requirements, at least forty-eight (48) hours (Saturday and Sunday ex-

- 3 -

cluded) before filling such openings, and the Employer shall give the Union equal opportunity with all other sources of applications, to refer qualified applicants for such job openings. Selection of all applicants for job openings shall not be based on or in any way affected by, union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligation or union membership policies or requirements, but all such applicants that become employees shall be subject to all the terms of this Agreement.

The Employer shall be the judge as to the qualifications of all applicants for job openings and shall retain the right to reject any job applicant, but on filling job openings shall immediately notify the Union of its selection of the applicant for the job.

Notices of Union security where required by law shall be posted at regular places of employment.

The Employer signed below, engaged in the building and/or construction industry, recognizes the Union as the sole and exclusive majority status representative of the bargaining unit provided for herein (commonly called operating engineers) employed by the Employer. This recognition is based on the Union's having shown, or having offered to show an evidentiary basis of its majority support.

- 4 -

On the basis of such majority support and pursuant to Section 9(a) of the National Labor Relations Act (as amended), the Employer confirms the Union as the sole and exclusive bargaining agent for the unit of operating engineers (as defined herein) in the employ of the Employer, which shall include the Employer's present and future job sites.

On the date this collective bargaining agreement is effective, this recognition is granted which shall include any amendments, extensions and successor Agreements. The Employer will not attempt to void or cancel the Agreement at any time because it has varied the size of the workforce or reduced the workforce to one or fewer employees.

## HOLIDAYS

All Employees employed on a straight time rate of pay shall be entitled to the following holidays: New Year's Day, President's Birthday, Memorial Day, Fourth of July, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, Christmas Day, or the days on which these are observed. On these days, the employees will receive eight (8) hours' pay as Holiday Pay regardless of what day the Holiday falls on. An employee ordered to report on such Holidays shall receive a minimum of eight (8) hours at time and one-half, in addition to his Holiday Pay.

- 5 -

An employee working on broken time or daily basis shall be paid holiday pay at broken time or daily rate for a holiday falling within the regular work week, or on Saturday, provided he has worked a total of three (3) days within the week in which the holiday occurs, and, provided further, that he was on the payroll immediately preceding the holiday. If required by the employer, he shall work the day before and the day after the holiday.

## HOURS

The regular work day shall consist of eight (8) hours, work to start not earlier than 6:00 A.M. All work done in excess of eight (8) hours per day shall be at the overtime rate.

On jobs where two (2) shifts are to be employed, the starting time of each shift will be mutually agreed upon before commencement of work, and such starting time shall continue for at least five (5) consecutive days; any change to commence the next Monday.

On jobs where three (3) shifts are to be employed, the first shift shall start at 8:00 A.M. Monday, the second shift at 4:00 P.M., and the third shift at 12:00 Midnight, and the last shift shall have completed a forty (40) hour week by 8:00 A.M. the fol-

- 6 -

lowing Saturday. All work between 8:00 A.M. Saturday and 8:00 A.M. Sunday shall be paid for at the rate of time and one-half, and all work between Sunday 8:00 A.M. and Monday 8:00 A.M. shall be paid at the rate of double time, provided it is on a three (3) shift operation. Each shift shall include one-half hour period for lunch. Prior to a three (3) shift operation, the parties agree to meet in a pre-job conference for the purpose of mutually agreeing to amend the above starting time and shift hours for each shift.

The regular work week shall be forty (40) hours, eight (8) hours each day Monday through Friday. Time and one-half shall be paid for all overtime except as hereinafter set forth. Double time shall be paid for all work performed on Sundays. Double time shall be paid for overtime for work indispensable to any operation upon which men of any other trade then working are being paid double time.

Employees shall be guaranteed forty (40) hours work per week, Monday through Friday. In the event they shall not work one day during the regular work week because of inclement weather, they may work a make-up day on Saturday, which make-up day shall be considered as part of the forty (40) hour guarantee.

An employee working on straight time shall be

- 7 -

guaranteed forty (40) hours work. After working forty (40) hours, he may notwithstanding the provision hereinbefore contained, be laid off at any time and paid at the time laid off only for the days he has worked, provided the machine he is operating is not used on the particular job for a period of seven (7) days or more, including Saturday and Sunday.

Employees working at broken time rates shall report unless otherwise instructed on the previous day not to do so and will be paid as follows:

a.  For reporting but not starting, they shall receive two (2) hours pay.

b.  For starting work, they shall receive four (4) hours pay.

c.  For continuing beyond the fourth hour, they shall receive eight (8) hours pay.

In the event that employees are ordered out for work on a Saturday or Sunday, at premium time, they shall be paid as follows:

a.  For reporting but not starting, they shall receive four (4) hours pay at premium rates.

b.  For work continuing beyond the fourth (4th) hour, they shall be paid for actual time worked.

- 8 -

Employees engaged in test pile work which precedes the start of a job shall receive not less than three (3) days pay unless work extends beyond the third day in which case a full week's wages shall be paid.

In cases where the general contract limits the hours to be worked, the Employer may work an eight (8) hour off shift, inclusive of lunch period, at straight time rates.

Four ten (4 - 10's) hour days will be allowed, with no overtime penalty when the Awarding Authority or construction owner prohibits the contractor from working a regularly scheduled work day.

Four ten (4 - 10's) hour days will be allowed in a week in which a Holiday falls. The employee shall receive eight (8) hours pay for the Holiday at straight time rates. There will be no Saturday make-up day.

All remote controlled equipment, normally manned by Operating Engineers will be assigned to Operating Engineers.

## CLASSIFICATIONS AND RATES

1. Shovels, Crawler and Truck Cranes, Derricks, Backhoes, Trenching Machines, Elevating Graders, Belt-type Loaders, Gradalls, Pile Drivers, Concrete

- 9 -

Pavers, on site Processing Plant (Engineer in charge), Dragline, Clam Shell, Cableways, Foreman Mechanics, Shaft Hoists, Mucking Machines, Front End Loader — 5 1/2 yards and over, Tower Cranes, Self-propelled Hydraulic Cranes — 10 tons and over, Dual Pavers, Automatic Grader-Excavator (C.M.I. or equal), Scrapers towing pan or wagon, Tandem Dozers or Push Cats (2 units in tandem), Welder using semi-automatic Welding Machine, Foreman Mechanic at Tunnel Heading, Shotcrete Machine, Tunnel Boring Machine, Combination Back Hoe-Loader — 3/4 yard hoe or over, Jet Engine Dryer, Tree Shredder, Post Hole Digger, Post Hole Hammer, Post Extractor, Truck Mounted Concrete Pump with boom, Roto-Mill, Grader, Horizontal Drilling Machine, John Henry Rock Drill and similar equipment.

2. Rotary Drill (with mounted Compressor), Compressor House (3 to 6 Compressors), Rock and Earth Boring Machines (excluding McCarthy and similar drills), Front End Loaders — 4 yards to 5 1/2 yards, Scraper — 21 yards and over (struck load), Forklifts — 7 ft. lift and over or 3 ton capacity and over, Sonic Hammer Console, Reclaimers, Road Planer/Milling Machine, Cal Tracks, Ballast Regulators, Rail Anchor Machines, Switch Tampers, Asphalt Paver, Mechanic, Welder and Transfer Machine

3. Bulldozer, Push Cats, Scrapers — up to 21

- 10 -

yards (struck load) self-propelled or Tractor Drawn, Front End Loaders — up to 4 yards, Well Driller, Pumpcrete Machine, Engineer or Fireman on High Pressure Boiler (on job), Self-loading Batch Plant (on job), Well Point Operators, Electric Pumps used in well point system, Tireman, Pumps — 16 inches or over total discharge, Compressors (1 or 2) 900 cu. ft. and over, Powered Grease Truck, Tunnel Locomotives and Dinkys, Grout Pumps, Hydraulic Jacks (jacking pipe, slip forms, etc.), Boom Truck, self-propelled Hydraulic Cranes — up to 10 ton, Combination Back Hoe-Loader — up to 3/4 yard hoe.

3A. Asphalt Rollers, Self-Powered Rollers and Compactors, Tractor without blade drawing sheeps foot roller, Rubber tire roller, Vibratory roller, or other type of compactors including machines for pulverizing and aerating soil, York Rake.

4. Hoists, Conveyors, Power Pavement Breaker, Self-propelled Material Spreader, Self-powered Concrete Finishing Machine, Two Bag Mixer with skip, McCarthy and similar Drills, Batch Plant (not self-loading), Bulk Cement Plant, 3 or more 10KW Light Plants, 30KW or more Generators, Power Broom.

5. Compressor (315 cu. ft. to 900 cu. ft., 1 or 2), Pumps — 4" to 16" total discharge.

- 11 -

6. Compressor (315 cu. ft.), Small Mixers with skip, Oiler, Pumps up to 4", Grease Truck, Helper on powered Grease Truck, Power Heaters, Welding Machines (when 3 or more welding machines are used, Classification 4 rate shall be paid), A-Frame Trucks, Forklifts — up to 7 ft. lift and up to 3 ton capacity, Hydro Broom, Parts Man (in repair shop), Power Safety Boat, Stud Welder.

7. Truck Crane Crews may be employed on a daily basis of eight (8) hours.

8. Master Mechanic

9. Boom Lengths

10. When an employee covered by this Agreement performs hazardous waste removal on a State and/or Federally designated waste site, and where relevant State and/or Federal regulations require employees to be furnished, and those employees use or wear required forms of personal protection, then in such cases an employee shall receive his regular hourly rate plus $2.00.

- 12 -

## RATES: STRAIGHT TIME WAGES:

**Classification**

|  | 6/1/02 | 12/1/02 | 6/1/03 | 12/1/03 |
|---|---|---|---|---|
| 1. | $24.43 | $24.73 | $25.43 | 26.13 |
| 2. | 24.17 | 24.47 | 25.17 | 25.87 |
| 3. | 23.97 | 24.27 | 24.97 | 25.67 |
| 3A. | 23.48 | 23.78 | 24.48 | 25.18 |
| 4. | 21.26 | 21.56 | 22.26 | 22.96 |
| 5. | 20.32 | 20.62 | 21.32 | 22.02 |
| 6. | 18.68 | 18.98 | 19.68 | 20.38 |
| 7. Operator (Daily Rate) | 202.64 | 205.04 | 210.64 | 216.24 |
| Oiler (Daily Rate) | 159.76 | 162.16 | 167.76 | 173.36 |
| 8. Master Mechanic | 25.67 | 25.97 | 26.67 | 27.37 |

9. Hourly Wages for Boom Lengths (including jib)

Over 150' - $1.00 per hour over the Classification 1 rate of pay
Over 200' - $2.50 per hour over the Classification 1 rate of pay
Over 250' - $3.50 per hour over the Classification 1 rate of pay
Over 300' - $4.50 per hour over the Classification 1 rate of pay
Over 350' - $6.00 per hour over the Classification 1 rate of pay

- 13 -

| Premium for Waste Premium | 2.00 | 2.00 | 2.00 | 2.00 |
|---|---|---|---|---|
| Health & Welfare Fund | 4.00 | 4.00 | 4.00 | 4.00 |
| Pension Fund | 1.60 | 1.70 | 1.70 | 1.70 |
| Central Pension Fund | .30 | .30 | .30 | .30 |
| Training Fund | .30 | 30 | .30 | .30 |
| Annuity Fund | 2.35 | 2.35 | 2.35 | 2.35 |
| Cooperative Trust | .25 | .25 | .25 | .25 |

**Classification**

|  | 6/1/04 | 12/1/04 | 6/1/05 | 12/1/05 |
|---|---|---|---|---|
| 1. | $26.73 | $27.43 | $28.43 | $29.43 |
| 2. | 26.47 | 27.17 | 28.17 | 29.17 |
| 3. | 26.27 | 26.97 | 27.97 | 28.97 |
| 3A. | 25.78 | 26.48 | 27.48 | 28.48 |
| 4. | 23.56 | 24.26 | 25.26 | 26.26 |
| 5. | 22.62 | 23.32 | 24.32 | 25.32 |
| 6. | 20.98 | 21.68 | 22.68 | 23.68 |
| 7. Operator (Daily Rate) | 221.04 | 226.64 | 234.64 | 242.64 |

- 14 -

| Oiler (Daily Rate) | 178.16 | 183.76 | 191.76 | 199.76 |
|---|---|---|---|---|
| 8. Master Mechanic | 27.97 | 28.67 | 29.67 | 30.67 |

9. Hourly Wages for Boom Lengths (including jib)

Over 150' - $1.00 per hour over the Classification 1 rate of pay
Over 200' - $2.50 per hour over the Classification 1 rate of pay
Over 250' - $3.50 per hour over the Classification 1 rate of pay
Over 300' - $4.50 per hour over the Classification 1 rate of pay
Over 350' - $6.00 per hour over the Classification 1 rate of pay

| Premium for Hazardous Waste | 2.00 | 2.00 | 2.00 | 2.00 |
|---|---|---|---|---|
| Health & Welfare Fund | 4.00 | 4.00 | 4.00 | 4.00 |
| Pension Fund | 1.70 | 1.70 | 1.70 | 1.70 |
| Central Pension Fund | .30 | .30 | .30 | .30 |
| Training Fund | .30 | .30 | .30 | .30 |
| Annuity Fund | 2.35 | 2.35 | 2.35 | 2.35 |
| Cooperative Trust | .25 | .25 | .25 | .25 |

- 15 -

**Deductions:**

Administrative Dues deduction currently of 2-1/2% of gross weekly wages or whatever amount the Union certifies in writing as the correct amount. In the event of a change, the Employer shall have thirty (30) days from the above certification to implement the change.

The Social Action Fund deduction currently of ten cents (.10) per hour worked or whatever amount the Union certifies in writing as the correct amount. In the event of a change, the Employer shall have thirty (30) days from the above certification to implement the change.

Employer contribution to the Cooperative Trust Fund shall be twenty five cents (.25) per hour paid.

The Trustees of the Training Fund are to determine prior to January 1st of each year as to whether an additional contribution to the Training fund will be required and will so recommend to the Employer Associations.

The Union reserves the right to transfer certain amounts from wages to fringe benefits upon thirty (30) days notice prior to the anniversary date. The employees may elect to transfer certain amounts from wages to the Health & Welfare Fund, Central Pension Fund and the Annuity Fund.

- 16 -

**Registered Apprentice Rates:**

| | | |
|---|---|---|
| ZERO to 1,000 Hours | - | 60% of Class 3 |
| 1,001 to 2,000 Hours | - | 70% of Class 3 |
| 2,001 to 4,000 Hours | - | 80% of Class 3 |
| 4,001 to 6,000 Hours | - | 90% of Class 3 |

In no event shall an Apprentice receive a rate higher than that of the Classification in which he is employed.

Broken time shall be allowed for machines covered by Classifications 2 to 6, inclusive. Rates shall be seventy-five (75) cents per hour over straight time rates.

On jobs where pumps, power heaters or well point systems must be worked twenty-four (24) hours a day, seven (7) days a week, four (4) engineers shall be employed and each shall be paid his respective straight hourly rate for forty (40) hours and double time rate for two (2) hours. In the event a Holiday occurs in any such week, he shall be paid an additional sum equal to six (6) hours pay at straight time.

On a pile driving machine where a steam boiler is directly attached to the machine to furnish steam for pile hammer, the machine will be manned by

- 17 -

two (2) qualified men at the rate of pay for Classification 1.

On a pile driving machine where a compressor is directly attached to the machine to furnish air for pile hammer, the machine will be manned by two (2) qualified men, one being the operator of the machine at the rate of pay of Classification 1, the second being the operator of compressor and oiler at the rate of pay of Classification 2.

Firemen or oilers shall be employed on all gasoline, oil, electric, air or steam operated shovels, cranes, tower cranes, draglines, backhoes 3/4 yard and over, trenching machines 30 inch bucket and over, elevating graders, belt type loaders, pile drivers, gradalls, concrete pavers, on site processing plants, clam shells, cableways, derricks — 50 ton and over, truck mounted hydraulic cranes — 20 ton and over, self-propelled hydraulic cranes over 50 tons.

The wage rate for the operator of any equipment for which a wage does not appear in any Classification will be determined by the parties by meeting immediately to negotiate said rate. The rate determined shall be paid from the time the machine started to work.

- 18 -

**HEALTH AND WELFARE, PENSION, TRAINING, ANNUITY & COOPERATIVE TRUST FUNDS**

1. Each Employer who is a party to this Agreement agrees to and shall pay and contribute an amount equal to that shown under "Schedule of Wages" in this Agreement to the following funds:

a. International Union of Operating Engineers, Local 98, Health and Welfare Fund, hereinafter referred to as the "Welfare Fund."

b. International Union of Operating Engineers, Local 98, Pension Fund, hereinafter referred to as the "Pension Fund."

c. Central Pension Fund of the International Union of Operating Engineers and Participating Employers, hereinafter referred to as the "Central Pension Fund."

d. Local 98, Engineers Joint Training, Retraining, Skill Improvement, Safety Education, Apprenticeship and Training Fund, hereinafter referred to as the "Training Fund."

- 19 -

e. Annuity Fund of Local 98, International Union of Operating Engineers, hereinafter referred to as the "Annuity Fund."

f. Joint Labor Management Cooperative Trust of Local 98, hereinafter refered to as the "Cooperative Trust."

2. The respective rates per hour as shown in the "Schedule of Wages" in the Agreement shall be paid for each payroll hour (an overtime hour for this purpose shall be considered a single hour) and proportionately for each part of such an hour for each person covered by this Agreement and employed on construction projects on which the Employer shall be engaged or otherwise in the hire of the Employer.

3. On or before the 10th day of each month the said payment shall be due and payable for all such payroll periods ending the next preceding month; but in the case of operations of less than a month's duration, or in the case of employers who are repeatedly delinquent in payments, the payment shall be due weekly and payable within three (3) days after the end of the payroll week.

4. The Employer agrees that the obligations to make payments shall be on a parity with and enforceable, with respect to each fund, as the obligation to pay wages, and this inclusive of the priorities

- 20 -

incident to and in proceedings for the relief of debtors; and this ARTICLE shall bind all legal representatives, successors, and assigns of an Employer.

5. The Trustees, or their representative when authorized by the Trustees in each case, shall have right to inspect at all reasonable times, the individual payroll records and such other records of an Employer as are deemed necessary and pertinent to determine whether such Employer is making due and full payment of its Employer Contributions.

6. Failure of the Employer to comply with this ARTICLE or any part thereof may be treated by the Local as a breach of the working agreement between the Local and the defaulting Employer; and notwithstanding other provisions of this Agreement (Arbitration, Page 17), or otherwise to the contrary, immediate work stoppage and use of picket lines against such defaulting Employer are permitted. The defaulting Employer will also be assessed interest charges at the current prime rate after sixty (60) days and additional liquidated damages at the rate of ten (10) per cent after ninety (90) days. An Employer who is continually delinquent may be required to furnish the Trustees with a Surety Bond, and all costs, inclusive of legal fees, incurred by the Funds in the collection of such obligations shall be borne by the defaulting Employer.

- 21 -

7. Notwithstanding any termination or cancellation under this Agreement or otherwise, the obligations of this ARTICLE and of the several Declarations of Trust shall be deemed continuous and the Health and Welfare Plan, Pension Plan, Central Pension Plan, Training Plan, Annuity Plan and Cooperative Trust shall not be discontinued pending negotiations of a new Agreement.

8. The Welfare, Pension, Training, Annuity and Cooperative Trust respectively, shall be administered by an equal number of Trustees appointed and/or elected by the Local and by the Associations (unless it shall be mutually agreed to decrease the number of Trustees or to consolidate the Welfare Fund, Pension Fund, Training Fund, Annuity Fund and Cooperative Trust with the funds respective of other similar Funds) under one or more Agreements and Declarations of Trust as they are or shall be executed by such Trustees.

9. Employer agrees to be bound by the Agreement and Declaration of Trust entered into as of September 7, 1960, establishing the Central Pension Fund of the International Union of Operating Engineers and Participating Employers and by any amendments to said Trust Agreement. Employer irrevocably designates as his representatives among the trustees of said fund such trustees as are named

- 22 -

in said Agreement and Declaration of Trust as employer trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as that document may be amended from time-to-time.

10. The Welfare Fund shall be used for the purpose of providing health and welfare benefits for employees covered by this Agreement and their dependents by means of insurance or otherwise in the discretion of the Trustees.

11. The Pension Funds shall be used for the purpose of providing pension benefits for employees by this Agreement by means of insurance or otherwise in the discretion of the Trustees.

12. The Training Fund shall be used for the purpose of providing and defraying costs of apprenticeship or other training programs.

13. The Annuity Fund shall be used for the purpose of providing retirement or lump sum benefits for employees and their dependents covered by this Agreement in the discretion of the Trustees.

14. The Cooperative Trust Fund shall be used for satisfiling the terms of its Trust Agreement.

- 23 -

## WORKING CONDITIONS

**1.** Any engineer or assistant engineer desiring to quit his job shall notify his employer and business agent and he shall continue on the job until relieved by a competent engineer or assistant engineer.

**2.** An employer may put an engineer on straight time the day he starts work, regardless what day it may be and must notify the engineer.

**3.** If the engineer is put on straight time at the end of a fraction of a week, he shall be paid at the broken time rate for the time already worked.

**4.** When an employer changes an engineer from straight time to broken time or from broken time to straight time, he shall notify the engineer of the change made, and same takes effect the following Monday.

**5.** On overtime, nothing less than one-half hour's pay for a fraction of an hour worked.

**6.** Engineers and assistant engineers shall be paid before stopping time on regular pay day. In case they are not paid, they shall receive straight time for waiting for their pay.

**7.** Engineers shall not be laid off on a pay day until they have received their pay.

- 24 -

**8.** No engineers shall operate other than his own machine. Any changes to be made in an engineer or any machine by Master Mechanics or Superintendents, the business agent will be notified before any changes are made.

**9.** An engineer who feels he has been wrongly discharged must make a complaint to the Union, or the business agent of the Union within twenty-four (24) hours of his discharge. If it is found that he is discharged through no fault of his own, or for unjust reason, then he is to be returned to his job, and the employer shall have to pay for his lost time, providing it does not exceed one (1) week's pay.

**10.** Engineers not to do work other than pertaining to engineers' work.

**11.** Electric pumps need not be manned. In the event that the employer desires to man electric pumps, an engineer shall be assigned.

**12.** The installation, maintenance and repair of pumps shall be the work of the Union.

**13.** The business agents will be allowed to visit all jobs and see that the terms of this Agreement are complied with.

**14.** Assistant Engineers and Oilers shall be under the immediate supervision of his engineer, and

- 25 -

be subject to the same rules, regulations and working conditions as his engineer.

**15.** A qualified master mechanic shall be employed when six (6) or more operating engineers, in Classifications 1 through 4, are employed on any day shift, on any one job. The master mechanic is to be selected by the employer. In the event that there shall be a second and/or third shift on any job, no master mechanic shall be required on said shifts, but in place thereof, a qualified foreman mechanic shall be employed. Master mechanic and foreman mechanic shall be responsible for the equipment under his jurisdiction, and shall be required to work with tools, if necessary, as directed by the employer.

**16.** All master mechanics employed under this contract must have worked within the territorial jurisdiction of Local 98 at some time within the three (3) years previous to their employment.

**17.** The Union shall appoint a Steward and shall notify the employer of its selection. The Steward shall not be laid-off or discharged without notice to the Union. He shall be given sufficient time to perform the duties assigned to him by the Union.

**18.** In the case of any jurisdictional dispute, the Union agrees to be bound by the decision of the Plan for the Settlement of Jurisdictional Disputes in the

- 26 -

Construction Industry, Building and Construction Trades Department AFL-CIO.

**19.** Any employer who is a party to this Agreement, which concerns itself primarily with highway and heavy construction work, shall be bound by the terms of any existing working agreement of this Local Union as related to building construction, if said employer shall engage in building work in any territory within the jurisdiction of this Union.

**20.** An Employer who requires an employee to move equipment to any job, location, project, or yard, and such assignment causes the employee to be without his own vehicle, shall provide the employee with transportation back to his own vehicle, and shall pay him at the premium rate when such takes place outside the employee's regular working hours.

**21.** No employee shall be held responsible for equipment not properly registered or because a permit was not obtained under any applicable law or regulation or for overloading a vehicle or for operating a vehicle or other equipment which is overloaded.

In any such case, the Employer will assume the legal costs involved in the defense of the Employee and shall pay any fines or other assessments levied against the Employee. The Employer shall reimburse

- 27 -

the Employee for any working time lost in connection with any such proceedings.

In the event the Employee's operating license is suspended for reasons stated herein, the Employer shall provide transportation to and from work or be liable for the work opportunity lost at no less than his regular earnings.

**22.** An employee required to stay away from home over night shall be compensated for reasonable room and board costs.

An Engineer or assistant engineer (oiler/apprentice) employed on a daily basis shall be employed each day the machine on which he is employed is assigned to a job. A machine shall be considered assigned to a job on the day the machine is dispatched to a job, and for each subsequent day the machine is on such job. Thereafter, a machine shall be considered to be unassigned to a job when:

a. It is returned to the Employer's yard.

b. It is removed from a job and parked on some location other than a job site.

c. Because of unusual traffic conditions, the machine is parked on the job to which it had been assigned.

- 28 -

d. The machine is moved to, and parked on, another job site and is to be activated on a day subsequent to the day following the day on which it is parked on such site.

**23.** The Employer and the Union will use their best efforts to maintain a journeyperson/apprentice ratio of six (6) to one (1).

**24.** An oiler is not required on a seventy (70) ton and below hydraulic crane.

**25.** The IUOE Local 98 Training Fund shall establish a ten (10) hour OSHA certification class and all bargaining unit employees must successfully complete this class within three years of June 1, 2002

### LIGHT DUTY WORK

The following applies to any bargaining unit employee who has been injured on the job and has been released to light duty work by the employee's attending physician, with such release in writing and identifying any limitations for work. The parties agree that the injured bargaining unit employee, released to light duty (as described above), will perform any light duty work the Employer may have, within the attending physician's written restrictions, regardless of the type of work involved. It is understood that this light duty work is temporary in na-

- 29 -

ture (less than six months) and such work will not give rise to a craft jurisdiction claim by any other person, entity, union or employer. If such occurs, the light duty work shall cease.

The Employer agrees the assigned light duty work will not replace a worker of any craft and the Employer further agrees to pay the light duty employee his/her normal bargaining unit employee hourly rate and make the required fringe benefit contributions. Light duty work will be limited to eight (6) hours per day and forty (40) hours per week.

Additionally, in the event an employee returns to work under this clause, who thereafter ceases employment for the Employer, the Employer shall not affect the employee's right to unemployment benefits or workers compensation benefits because of work, as a result of this clause. For example, work under this clause shall not reduce the worker's compensation or unemployment benefits an individual (who has ceased work under this clause) is entitled to because of such work.

The aforementioned light duty work clause shall terminate May 31.2004. Prior to that date, the parties will meet, confer and negotiate any extension and/or changes in the language regarding the light duty work.

- 30 -

### LIABILITY INSURANCE

The Employer agrees without cost to the employees to provide liability job insurance coverage in the amount of no less than $500,000.000 for each occurrence and $1,000,000.00 aggregate for all employees covered by this Agreement.

### ADMINISTRATIVE EXPENSE DUES

Upon notification by the Union that a uniform administrative dues deduction has been authorized, the employer shall deduct said uniform administrative dues. The Union shall be responsible for obtaining all individual signed authorizations.

The Union will hold harmless the employers for any liabilities under said deductions.

### SOCIAL ACTION FUND

**1.** Upon notification by the Union that a uniform Social Action Fund deduction has been authorized, the employer shall deduct said uniform Social Action Fund. The Union shall be responsible for obtaining all individual signed authorizations.

**2.** It shall be the sole responsibility of the Local to procure, pursuant to the provisions of Section 302 (c) of the Labor-Management Relations Act of 1947,

- 31 -

the signed individual authorization of every employee subject to this Agreement, both present and future. The Local shall indemnify and hold harmless the Employer from any claims arising under this Article including the furnishing of counsel to defend against any such actions.

## SHAFTS AND TUNNELS

These provisions are supplementary to terms and provisions set forth elsewhere in this Agreement.

1. When two shifts are employed on shaft and tunnel work, the starting time shall be either 7:00 A.M. or 8:00 A.M. Said shifts shall be continuous and shall be of eight (8) hours duration, each inclusive of one-half hour lunch period. The matter of rotating shifts shall be considered by the parties at a pre-job conference.

2. It is agreed that there will be engineers employed on shaft hoists during all shifts if any men are working in shaft or tunnel.

3. There shall be an additional seventy-five (75) cents hourly differential on shaft and tunnel work for those engineers and assistant engineers, whose working assignments require them to go into shaft or tunnel. Men working in Tunnels and Shafts to

- 32 -

receive a minimum of four (4) hours differential pay and eight (8) hours differential pay after the fourth hour.

4. When compressed air is used, an engineer will be assigned to low air equipment.

5. Locker room facilities and travel time on the job, as well as other matters, will be handled in pre-job conference.

6. A qualified Master Mechanic shall be employed when six (6) or more engineers (other than oilers or apprentices) are employed on any day shift on any one job. In the event there shall be a second and/or third shift on any job, no master mechanic shall be required on said shifts, but in place thereof, a qualified foreman mechanic shall be employed, and he shall be responsible for the equipment under his jurisdiction and shall be required to work with the tools, if necessary, as directed by the Employer.

## TRANSPORTATION AND EQUIPMENT

No employee will be allowed to furnish any transportation, power tools, special tools or equipment for the employer's benefit or use; unless by a bona fide rental agreement, a copy of which will be made available to the Union.

This clause is not intended to preclude any em-

- 33 -

ployee from renting this equipment if he so desires, but cannot be used by the employer in any way as a criterion of employment.

Normal transportation to and from the job is the responsibility of each employee.

## SAFETY

No employee shall be required or assigned to engage in any activity involving dangerous conditions of work or danger to person or property in violation of an applicable statute, court order, or governmental regulation relating to safety of person or equipment.

The Employer and the Union do hereby agree to work together to promote safety on the job for the benefit of all Employees. Safety rules and regulations will be made known to all employees and the use of safety equipment will be continually promoted by both parties.

Where the Employer has a Safety Committee on any job, one of the employees who is a member of the Union (Local 98) shall be a party to such committee. The duties of the committee will be described by the Employer.

- 34 -

Safety equipment required and furnished by the Employer shall be properly used by the employees at all times when so required, and shall be returned to the employer when not needed. Where safety shoes are required, the employer shall make available proper shoes; and half the cost of such shoes shall be borne by the employees.

Men required to work in foul weather to be supplied with rain gear consisting of jackets and hats. Pants and boots will be furnished by the employer when he deems it necessary or when required by law. The employee shall be held responsible for the gear assigned to him and shall return the same upon termination of his employment.

Dozers, Tractors, Scrapers, Loaders and Graders will be furnished with cabs or curtains; also with summer and winter fans.

Welders will be supplied with hoods, gloves, goggles and glasses.

The safety and health standards and rules contained herein are minimum standards and are not intended to imply that the Union objects to the establishment and imposition by the Employer of additional or more stringent rules to protect the health and safety of the employees. It shall be the exclusive responsibility of the Employer to insure compliance with safety and health standards and rules.

- 35 -

## SUBCONTRACTING

The Employer agrees that in the event he shall subcontract any item of work contained in his prime contract which is within the craft jurisdiction of the Local and which is to be performed on the job site proper, he shall provide in the subcontract that the subcontractor shall assume the terms and conditions of this Agreement. This paragraph shall be interpreted and enforced consistent with Section 8 (e) of the Labor Management Act as amended.

## PRE JOB CONFERENCE

The Employer agrees that as soon as a contract for a job has been awarded or within a reasonable time thereafter, but prior to the starting of any job, he will notify the Union of such job award, make arrangements and hold a pre-job conference with the Union. This clause shall apply to every job or project undertaken by the Employer.

## EQUAL OPPORTUNITY

The parties to this Agreement agrees to activity promote and adhere to the intent and purpose of the Civil Rights Act of 1964 and the Executive Orders issued pursuant thereto.

- 36 -

## ARBITRATION

1. In any case of violation, misunderstanding, disagreement or difference in interpretation of this Agreement by either party, either party shall refer the matter to the Business Agent within fifteen (15) days after the alleged violation occurred. The Business Agent will meet forthwith with the parties concerned. Failure to reach a settlement of the misunderstanding, either party may refer the same to the Grievance Committee as hereinafter set forth.

2. The Grievance Committee shall be comprised of two (2) representatives chosen by the employer together with two (2) representatives chosen by the employees. This Committee will meet within forty-eight (48) hours of notification to hear arguments on both sides of the controversy and shall render its decision within seventy-two (72) hours from time of this first meeting.

3. Should the Grievance Committee fail to arrive at a decision within the time specified, an umpire shall be chosen by the Committee and the matter in dispute shall be referred to him for decision. Selection of the Umpire shall be made within twenty-four (24) hours of expiration of the Committee's time. If the Committee is unable to agree upon an Umpire, the matter shall be referred to the Ameri-

- 37 -

can Arbitration Association. Pending final decisions of the grievance, work shall be continued in accordance with the provisions of this Agreement.

## SEVERAL LIABILITY

The obligation of each employer-member of the Association shall be several and not joint.

## INVALIDITY

The invalidity of any provision herein shall not affect the remainder of this Agreement.

## TERMINATION

The terms of this Agreement shall become effective as of June 1, 2002 and subject to the following conditions, shall continue in effect to May 31, 2006.

This Agreement shall continue to be effective from year to year unless either party on or before March 1, 2006 or prior to March 1st in any year thereafter gives notice in writing to the other party of its intention to terminate, alter, or amend this Agreement.

- 38 -

IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed by their duly authorized representatives the day and year first above written.

LABOR RELATIONS DIVISION
OF THE CONSTRUCTION
INDUSTRIES OF MASSACHUSETTS

John D. O'Reilly, III

William Sullivan

FOR THE UNION

John J. Richards, Business Manager/President

Anthony M. Consolini, Recording-Corresponding Secretary

Christopher Clark, Business Agent

- 39 -

July 17, 2002
John D, O'Reilly III
Labor Relations Division of the
Construction Industries of Massachusetts
77 Turnpike Road
Southborough, Massachusetts 01745-0118

Dear John:

This will confirm the understanding of the parties, reached In the year 2002 the negotiations for the Lcoal 98 heavy and Highway Agreement, that to the extent signatory contractors have assigned the operation of articulting trucks to Local 98, that assignment will remain in effect. Similarly, to the extent that signatory employers have assigned this work to other trades, Local 98 will not contest that assignment.

This letter will not serve as the basis for a Local 98 claim to such trucks owned or operated by employers who have not had such a previous work assignment.

Kindly sign your approval of this understanding, as indicated below.

JOHN D. O'REILLY III
Counsel
JOHN J. RICHARDS
Business Manager/President

- 40 -

July 17, 2002
John D, O'Reilly III
Labor Relations Division of the
Construction Industries of Massachusetts
77 Turnpike Road
Southborough, Massachusetts 01745-0118

Dear John:

This will confirm the understanding of the parties that the discussions of the parties which took place in the 2002 negotiations with regard to changing or leaving alone the language of the agreement dealing with the premium for hazardous waste will not be referred to by either party in any future dispute over the applicaiton or the interpretation of that provision of the agreement.

Kindly sign your approval of this understanding, as indicated below.

JOHN D. O'REILLY III
Counsel
JOHN J. RICHARDS
Business Manager/President

- 41 -