UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS    WESTERN DIVISION
------------------------------------------------------------------------

INTERNATIONAL UNION OF OPERATING ENGINEERS )
LOCAL 98 ANNUITY FUND, PENSION FUND, HEALTH )
AND WELFARE FUND AND JOINT TRAINING, )
RETRAINING, SKILL IMPROVEMENT, SAFETY )
EDUCATION, APPRENTICESHIP AND TRAINING FUND )
by William Sullivan and David Cardimino, as Trustees; )
INTERNATIONAL UNION OF OPERATING ENGINEERS )
LOCAL NO. 98 AND EMPLOYERS COOPERATIVE TRUST, )
by William Sullivan and David Cardimino, as Trustees; CENTRAL )
PENSION FUND OF THE INTERNATIONAL UNION OF )   Civil Action No.
OPERATING ENGINEERS AND PARTICIPATING )   04-30212-KPN
EMPLOYERS, by Michael R. Fanning, as Chief Executive )
Officer; and INTERNATIONAL UNION OF OPERATING )
ENGINEERS LOCAL 98, AFL-CIO, by David Cardimino, as )
Business Manager, )
)
                            Plaintiffs, )
)
               v. )
)
NITA INC., )
)
                            Defendant. )
------------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

                                                  BLITMAN & KING LLP
                                                  Attorneys for Plaintiffs
                                                  Office and Post Office Address
                                                  Franklin Center, Suite 300
                                                  443 North Franklin Street
                                                  Syracuse, New York 13204-5426
                                                  Telephone: (315) 422-7111
                                                  Facsimile: (315) 471-2623

Of Counsel:

    Charles E. Blitman, Esq.
    Jennifer A. Clark, Esq.
    Joseph R. H. Doyle, Esq.

## INTRODUCTION

The matter before this Court is plaintiffs' motion for default judgment, pursuant to Rule 54 and Rule 55 of the Federal Rules of Civil Procedure, in favor of plaintiffs and against the defendant in the amount of $27,145.88.

The underlying action was brought against defendant NITA Inc., to collect delinquent fringe benefit contributions, deductions, interest, liquidated damages, costs and disbursements, and attorneys' fees due and owing to multi-employer benefit plans and a labor organization.

## STATEMENT OF FACTS

Defendant NITA Inc. [hereinafter "Company"] is party to a collective bargaining agreement with International Union of Operating Engineers Local 98, AFL-CIO [hereinafter referred to as "Agreement"].[1] Pursuant to the provisions of the Agreement, the defendant is obligated to remit fringe benefit contributions and deductions to the plaintiffs. Contributions and deductions are to be remitted for all hours worked by employees who are covered by the collective bargaining agreement, i.e., performing bargaining unit work.

Pursuant to the Agreement, the Company is bound by the rules and regulations of the Funds' Board of Trustees and the terms and conditions of the Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 Annuity Fund, the Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 Pension Fund, the

---

[1] Affidavit of Charles E. Blitman, sworn to September 28, 2005, submitted in support of plaintiffs' motion [hereinafter "Blitman Aff."], Exh. "D".

Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 Health and Welfare Fund, the Restated Agreement and Declaration of Trust of the Joint Training, Retraining, Skill Improvement, Safety Education, Apprenticeship and Training Fund of the International Union of Operating Engineers Local 98, the Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 and Employers Cooperative Trust, the Restated Agreement and Declaration of Trust of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers and the International Union of Operating Engineers Local 98 Pension, Annuity, Health and Welfare and Training Funds' Collections Policy. ["Agreements and Declarations of Trust" and "Collections Policy"]. The Agreements and Declarations of Trust, the Collections Policy and 29 U.S.C. §1132(g)(2) obligate the Company, if it is delinquent in remitting contributions and deductions, to pay interest, the greater of interest or liquidated damages, costs and fees of collection and attorneys' fees.[2]

During the period September 2002 through September 2003, the defendant failed to timely remit fringe benefit contributions and deductions to the plaintiffs. Upon the defendant's failure to pay this delinquency, the plaintiffs commenced the instant lawsuit to collect the delinquent fringe benefit contributions and deductions together with interest, liquidated damages, costs and fees of collection and attorneys' fees and to obtain an audit.

---

[2] Blitman Aff., ¶¶ 12-13 Exhs. "E" and "F".

2

**ARGUMENT**

**POINT I**

**PLAINTIFFS ARE ENTITLED TO A FINAL JUDGMENT
ON THEIR FIRST AND THIRD CAUSES OF ACTION**

Federal Rules of Civil Procedure Rule 54(b) provides that the Court may enter partial judgment on fewer than all of the claims or parties where there is no just reason for delay. See Curtis –Wright Corp. v. General Electric Co., 446 U.S. 1, 8 (1980). To exercise its authority under Rule 54(b), the Court must insure that the judgment "be accompanied by a reasoned, even if brief, explanation" that delay is unwarranted. See Cuoco v. Moritsugu, 222 F.3d 99, 110 (2d Cir. 2000). It is well settled that there is "no just reason for delay" where the party seeking the judgment would "be prejudiced by a delay in recovering a monetary award" and there is no prejudice to the other party litigating a "separate, distinct and independent quarrel" with the movant. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 13 (2d Cir. 1997); L. B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998); Avondale Industries, Inc. v. The Travelers Indemnity Company, 123 F.R.D. 80, 82 (S.D.N.Y. 1988).

Rule 54(b) allows the district court to depart from the usual principle that a final judgment is not entered prior to a complete adjudication of all the parties' claims so that the court can provide relief where it is needed to avoid undue hardship to the parties. Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir. 1987), cert. denied, 483 U.S. 1021 (1987). Rule 54(b) is applicable to actions involving multiple claims for relief where these claims are separate and distinct such that they involve some different questions of fact and law and can be separately enforced. Litton Industries, Inc. v. Lehman Brothers, 767 F.Supp. 1220, 1236 (S.D.N.Y. 1991). "The mere fact that the claims arise out of the same transaction or

occurrence does not preclude a finding of separability." Id.

In this case, as set forth below, it is respectfully submitted that final judgment should be granted in favor of Plaintiffs on their First and Third Causes of Action. A final judgment on these Causes of Action is necessary because the Defendant's violation of its obligations has reduced the corpus of the Plaintiff Funds and reduced the Plaintiff Funds' income. A delay in allowing Plaintiffs to enforce their claim and to collect the debt may result in the debt being uncollectible. Therefore, it is respectfully requested that the Court enter a final judgment on the First and Third Causes of Action, in accordance with Rule 54(b), against the defendant in the amount of $27,145.88. For these same reasons, the Court should enter an Order on Plaintiffs' Second and Third Causes of Action, compelling an audit and retaining jurisdiction to enter judgment for any additional fringe benefit contributions uncovered by the audit.

## POINT II

### DEFAULT JUDGMENT MUST BE ENTERED AGAINST DEFENDANT IN THE AMOUNT OF $27,145.88.

**A.   Judgment In the Amount of $27,145.88 Must Be Entered Against the Defendant.**

In any action under 29 U.S.C. §1132(g)(2) to enforce an employer's obligation to remit contributions in accordance with the terms of its contract and the plan, the employee benefit plan is entitled to recover the contributions, interest, liquidated damages, attorneys' fees and costs. Thus, 29 U.S.C. §1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of the plan to enforce Section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> (A)   the unpaid contributions,

4

> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of -
>
> > (i) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorneys' fees and costs of the action to be paid by the defendant; and
>
> (E) such other legal or equitable relief as the court deems appropriate. (emphasis added)

See Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 1997 U.S. Dist. LEXIS 22233. This statutory relief applies and the employer is strictly liable for that relief whenever there are contributions unpaid at the time the lawsuit is commenced by the plan and whenever delinquencies arise after commencement of the lawsuit.

In addition to its statutory obligations, the defendant is contractually obligated to pay interest, liquidated damages and attorneys' fees and costs in connection with late payment of contributions, regardless of whether those contributions are paid prior to or subsequent to commencement of a lawsuit. The International Union of Operating Engineers Local 98 Pension, Annuity, Health and Welfare and Training Funds' Collections Policy provides, in part:

> If no payment has been received by the Funds on or before the thirtieth (30th) day of the month following the month during which hours are worked and for which contributions are required, the Employer shall be assessed interest on the amount of delinquent contributions at the rate of one and one-half percent (1-½%) per month from the date the monies were due (the tenth (10th) day of the month), liquidated damages of twenty

percent (20%) of the delinquent contributions, auditing fees, and any attorney's and paralegal fees and other costs.[3]

It is also well established that when a defendant has failed to plead or otherwise defend an action, the Court shall enter default judgment against it in accordance with Rule 55(b) of the Federal Rules of Civil Procedure.[4] "A defaulting party 'is taken to have conceded the truth of the factual allegations of the complaint as establishing the grounds for liability as to which damages will be calculated.'"[5] In the instant case, those allegations which have been admitted by the defendant are as follows: (1) the defendant is party to a collective bargaining agreement with International Union of Operating Engineers Local 98, AFL-CIO ["Agreement"] (¶16 of the Complaint); (2) the defendant is bound by the Funds' Agreements and Declarations of Trust (¶17 of the Complaint);[6] (3) the defendant is obligated to remit contributions to the plaintiff Funds, dues deductions, and Social Action Fund monies to the Union (¶¶18-

---

[3] Blitman Aff., Exh. "F", International Union of Operating Engineers Local 98 Pension, Annuity, Health and Welfare and Training Funds' Collections Policy, p. 3.

[4] Rule 55(b) provides, in part:

> (b)  Judgment. Judgment by default may be entered as follows:
>
> (1) When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if he has been defaulted for failure to appear and if he is not an infant or incompetent person.
>
> (2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; . . .

[5] Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59 (1st Cir. 2002)(quoting Franco v. Selective Ins. Co., 184 F.3d 4 (1st Cir. 1999)).

[6] By executing the collective bargaining agreement, the defendant bound itself to the rules and regulations and terms and conditions of the Agreements and Declarations of Trusts incorporated therein by reference. Jaspan v. Glover Bottle Gas Corporation, 80 F.3d 38 (2d Cir. 1996). Moreover, by agreeing to remit contributions to the plaintiff Funds, the Company agreed to abide by those rules and regulations established by the Funds' trustees to administer the Funds and to collect delinquencies. Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co., 932 F.2d 1443 (11th Cir. 1991); Morris v. New York State Teamsters Conference Pension and Retirement Fund, 580 F.Supp. 180 (W.D.N.Y. 1983), aff'd, Building Trades Employers Association v. New York State Conference Pension and Retirement Fund, 761 F.2d 115 (2d Cir. 1985); Sinai Hospital v. Hospital Employees Benefit Fund, 697 F.2d 567 (4th Cir. 1982).

20 of the Complaint); (4) the defendant is liable, in the event of a delinquency, for interest, liquidated damages, costs and fees of collection and attorneys' fees. (¶21 of the Complaint); (5) the defendant owes $13,126.99 in contributions and deductions for the period September 2002 through August 2003 together with the applicable interest and liquidated damages (¶¶22-24 of the Complaint); (6) the Agreement, the Trusts and Collections Policy require the defendant to produce its books and records for audit by the plaintiffs (¶26 of the Complaint); and (7) the defendant is liable for all costs and expenses of the audit, all auditing fees, and any and all attorneys' and paralegal fees incurred in obtaining the audit (¶27 of the Complaint).[7]

Based upon the foregoing, the defendant is indebted to the plaintiffs in the sum of $27,145.88. That sum consists of $13,265.93 in contributions and deductions, $5,418.14 in interest, $5,138.84 in liquidated damages, and $3,322.97 in attorneys' fees and costs, including paralegal fees.[8]

**B.     An Order Must be Entered Compelling the Defendant to Produce its Books and Records for an Audit.**

In addition, the Court should enter an Order directing the Defendant to produce its books and records for Plaintiffs' review and audit, to pay the cost and expense of such audit, and to pay all attorneys' and paralegal fees and costs incurred in obtaining that audit. Further, the Court should retain jurisdiction of this action for purposes of entering a judgment for any and all contributions and deductions that are determined to be due and owing as a result of the audit, plus the applicable interest thereon, liquidated damages and costs and expenses of collection.

---

[7] Blitman Aff., Exh. "A".

[8] Blitman Aff., ¶¶15-19 and ¶¶24-30.

7

In cases similar to the instant matter, the courts have consistently granted judgment in favor of employee benefit funds and against employers where the governing documents clearly spell out the employer's obligations. For example, in <u>Central States, Southeast & Southwest Pension Fund v. Central Transport, Inc.</u>, 472 U.S. 559 (1985), the Supreme Court held that a fund was entitled to audit an employer's books and records despite the employer's argument that some of the records sought by the fund were beyond the scope of its obligation. As the Court noted, summary judgment was warranted because the fund's trust documents specifically provided that it could examine any of the employer's records. Moreover, the Court noted that review of the employer's records was necessary to determine if it was complying with its obligations.

Similarly, as noted by the Second Circuit in <u>Jaspen v. Glover Gas Corporation</u>, 80 F.3d 38 (2nd Cir. 1996), "the Fund Trustees have a fundamental duty to locate and take control of Fund property – a duty for which the right to audit is crucial" and that the right to audit is "essential to management of the Funds". <u>Id</u> at 41. The Second Circuit in <u>Jaspen</u> further noted that regardless of the terms of the trust agreement, employee benefit plans are entitled to examine all of the employer's books and records and the employer is obligated to produce those books and records pursuant to ERISA, 29 U.S.C. Section §§ 1059(a) (recordkeeping and reporting requirement) and 1001(b) general disclosure requirement). <u>Id</u>. at fn. 3. <u>Accord, New York State Teamsters Conference Pension Fund v. Boening Bros., Inc.</u>, 92 F.3d 127 (2nd Cir. 1996); <u>Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.</u>, 932 F.2d 1443 (11th Cir. 1991); <u>New York State Teamsters Health and Hospital Fund v. Silverline Construction, Inc.</u>, 11 EBC 2371 (N.D.N.Y. 1989).

In the instant matter, it is clear from the plain language of the Trusts that defendant is required to submit to an audit of all of its employment, payroll and related records. Those Trusts at Article IV, Section 4, provide, in pertinent part:

> Each Employer shall promptly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the

>   Trustees may reasonably require in connection with the
>   administration of the Trust Fund and for no other purpose.

(Blitman Aff., Exh. "E", Pension Fund Trust, p. 15; Welfare Fund Trust, p. 15; Annuity Fund Trust, p. 15; Training Fund Trust, p. 20; Local 98 ECT Trust, p. 21). In addition, Collections Policy provides, in pertinent part:

>   The Trustees may at any time check and examine the payroll
>   records of any and copy such books, records, papers, or reports of
>   the Employer at any reasonable time …If it is found by the
>   Trustees, however, that the Employer has violated its obligations
>   under the rules, regulations and/or Trust Agreements of the Funds
>   including, but not limited to, its obligation to timely remit fringe
>   benefit contributions to the Funds, then the Employer shall
>   reimburse the Funds for all auditing charges for examining the
>   Employer's books. If it is necessary for the Funds' Counsel to
>   perform legal services for any reason, including the
>   commencement of a lawsuit or other proceedings, to obtain the
>   audit and to compel the Employer's production of its payroll
>   records, then in that event, the Employer shall be liable for all
>   auditing fees, attorneys' and paralegal fees, court costs,
>   disbursements and expenses incurred by the Funds in enforcing the
>   Fund's right to audit.

(Blitman Aff., Exh. "F", Collections Policy, p. 4). See, Blitman Aff., Exh. "D", p. 21.

The foregoing provisions are clear and unequivocal; the Plaintiff Funds may audit all of the Defendant's employment, payroll and related records at any time. The provision permits them to determine the amount of monies the Defendant owes and to ensure that the Defendant has fully complied with its obligations. It is respectfully submitted, therefore, that the Court must grant Plaintiffs' motion for default judgment compelling the Defendant to comply with its obligations under the Trusts and to produce all of its records for an audit.[9]

---

[9] Rule 34 of the F.R.C.P. independently permits plaintiffs access to the documents requested. Rule 34 of

## POINT III

### PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS, INCLUDING PARALEGAL FEES, IN THE AMOUNT OF $3,322.97.

Plaintiffs are statutorily entitled to an award of the attorneys' fees and costs incurred in connection with the collection of the fringe benefit contributions and deductions. This is an action to enforce the defendant's obligation pursuant to a collective bargaining agreement and plans to timely pay contributions and various monies due under ERISA. Section 502(g)(2) of ERISA [29 U.S.C. §1132(g)(2)] provides, in part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce Section 1145 of this title <u>in which a judgment in favor of the plan is awarded, the court shall</u> award the plan.
>
> . . .
>
> (d) Reasonable attorneys' fees and costs of the action, to be paid by the defendant.[10]

In addition, the defendant is contractually obligated to reimburse the plaintiffs for all attorneys' fees and

---

(...continued...)

the F.R.C.P. permits a party to discover any material, not privileged, which is relevant to the pending litigation. Moreover, such documents are discoverable even if they contain information that would be inadmissible at trial. FRCP Rule 34.

[10] Legislative history establishes that Congress enacted Section 502(g)(2) of ERISA so that plan trustees would be able to recoup the actual costs incurred in collecting delinquencies. In describing the effect and intent of Section 502(g)(2), Senator Williams stated:

> A plan sponsor that prevails in any action to collect delinquent contributions will be entitled to recover the delinquent contributions, court costs, attorneys' fees, interest on the contributions owed and liquidated damages. <u>The intent of this section is to promote the prompt payments of contributions and assist plans in recovering the costs incurred in connection with delinquencies.</u>

126 Cong. Rec. §11673 (daily ed. Aug. 26, 1980 (remarks of Sen. Williams)).

10

costs incurred in connection with collection of the debt. Thus, the Collection Policy of the International Union of Operating Engineers Local Union 98 Pension, Annuity, Health & Welfare and Training Fund provides in part:

> If the Funds' Counsel performs legal services, which may include (but are not limited to) the preparation for and/or the commencement of legal or agency proceedings against the Employer, to recover the amounts owed to the Funds pursuant to this Section, the Employer shall reimburse the Funds for all attorneys' fees and paralegal fees, court costs, disbursements, auditing fees and expenses incurred by the Funds in attempting to collect and in collecting the Funds' monies.[11]

In accordance with defendant's contractual obligation and in accordance with 29 U.S.C. Section 1132(g)(2), it is submitted that the defendant is liable for and plaintiffs are entitled to an award of attorneys' fees and costs, including paralegal fees, in the amount of $3,322.97, representing $3,043.05 in attorneys' and paralegal fees and $279.92 in costs and disbursements.

As indicated by the plaintiffs' motion papers, the figure of $3,322.97 was calculated by multiplying the number of attorney and paralegal hours spent in this action by the hourly rate charged to the plaintiffs.[12] This formula is a basis for calculating attorneys' and paralegals' fees under ERISA.[13]

---

[11] Blitman Aff., Exh. "F", pp 3-4. See Exh. "E", Agreement and Declaration of Trust of International Union of Operating Engineers Local 98 Annuity Fund, p. 16; the Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 Pension Fund, p. 15; the Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 Health and Welfare Fund, p. 16; the Restated Agreement and Declaration of Trust of the Joint Training, Retraining, Skill Improvement, Safety Education, Apprenticeship and Training Fund of the International Union of Operating Engineers Local 98, pp. 20-21; the Restated Agreement and Declaration of Trust of the International Union of Operating Engineers Local 98 and Employers Cooperative Trust, p. 21; and the Restated Agreement and Declaration of Trust of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, p. 4.

[12] Blitman Aff., ¶26, Exh. "I".

[13] See Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 1997 U.S. Dist. LEXIS 22233 (D. Ma. 1997). The Court noted that where "the relevant statute does not provide an alternate method for calculating reasonable attorney's fees, the 'lodestar' method should be used." Id. at *37 n. 10. The Court further explained that the "lodestar" is arrived at by "determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." Id. [internal quotations omitted].

Moreover, the hourly rates claimed are reasonable given the experience and reputation of the Funds' attorneys and paralegals, the time and labor required, the amount of delinquency involved, and the results obtained. See, Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 1997 U.S. Dist. LEXIS 22233 (ERISA action – $190.00 hourly rate reasonable considering factors such as experience of the attorney, complexity of the work and the results obtained); Malden Mills Indus. Inc. v. Ilgwu Nat'l Retirement Fund, 780 F. Supp. 68 (D. Ma. 1991) (ERISA action – attorney reimbursed at the rate of $225.00 per hour).

For the foregoing reasons, the Court should award $3,322.97 in attorneys' fees and costs, including paralegals' fees. Such an award will fulfill congressional intent and enable the Plan Trustees to recoup their actual costs.

## **CONCLUSION**

Based upon all the foregoing reasons and authorities, it is respectfully requested that this Court enter a default judgment in favor of the plaintiffs and against the defendant:

(1) In the amount of $27,145.88, together with the costs and disbursements of this proceeding;

(2) Requiring defendant to produce its books and records for plaintiffs' review and audit, to pay the cost and expense of such audit, to pay all auditing fees, and to pay all attorneys' and paralegal fees and costs incurred in obtaining that audit; and

(3) Retaining jurisdiction to enter judgment for any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated damages, costs and expenses of collection, audit fees and attorneys' and paralegal fees.

DATED: September 28, 2005

                                            **BLITMAN & KING, LLP**

By: _/s/ Charles E. Blitman_
      Charles E. Blitman, of Counsel
      Bar Roll No. 653148
      Attorneys for Plaintiffs
      Office and Post Office Address
      Franklin Center, Suite 300
      443 North Franklin Street
      Syracuse, New York 13204-5426
      Telephone: (315) 422-7111
      Facsimile: (315) 471-2623
      E-mail: ceblitman@bklawyers.com

I hereby certify that a true copy of the above document was served upon the defendant, NITA Inc., by mail on September 28, 2005.

_/s/ Charles E. Blitman_
Charles E. Blitman, of Counsel

H:\col\Legal\IUOE98-NITA-MemoSupportMDJ-BRF.doc

13